# EXHIBIT 1

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

<div style="float:right; border:1px solid black; padding:4px;">

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**CONFORMED COPY**
ORIGINAL FILED
Superior Court of California
County Of Los Angeles

AUG 28 2018

Sherri R. Carter, Executive Officer/Clerk
By: Charlie L. Coleman, Deputy

</div>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DEPARTMENT OF CONSUMER AFFAIRS, CONTRACTORS
STATE LICENSE BOARD, a California state agency; STEVEN SKOGEBO,
an individual; and DOES 1-25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SANTOSHA PADFIELD

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse<br>111 N. Hill St., Los Angeles, CA 90012 | *(Número del Caso)* BC 718897 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
S. Shane Sagheb, 5950 Canoga Ave., Suite 130, Woodland Hills, CA 91367  818-489-1511

| DATE: **AUG 28 2018** | SHERRI R. CARTER | Clerk, by | C.L. COLEMAN | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Department of Consumer Affairs, Contractors State License Board

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* Cal. Govt. Code § 955.4

4. ☒ by personal delivery on *(date):* 8/31/18

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

AUG 28 2018

Sherri R. Carter, Executive Officer/Clerk
By: Charlie L. Coleman, Deputy

1 | **Sagheb Law & Mediation Services,** a professional corporation
S. Shane Sagheb (SBN 109878)
2 | 5950 Canoga Avenue, Suite 130
Woodland Hills, CA 91367
3 | 818.489.1511
shane@ssslams.com
4 |
Attorney for Plaintiff
5 | Santosha Padfield

6 |

7 |

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF LOS ANGELES**

10 |

11 | SANTOSHA PADFIELD,                              Case No.:   **BC 7 1 8 8 9 7**

12 |             Plaintiff,                         Unlimited Jurisdiction

13 |       v.                                       **COMPLAINT FOR DAMAGES:**

14 | DEPARTMENT OF CONSUMER AFFAIRS,          1.  HARASSMENT
CONTRACTORS STATE LICENSE            2.  FAILURE TO TAKE CORRECTIVE
15 | BOARD, a Callifornia state agency; STEVEN        ACTION
SKOGEBO, an individual; and DOES 1-25,   3.  FAILURE TO PREVENT
16 | inclusive,                                       HARASSMENT
                                             4.  RETALIATION
17 |             Defendants.                    5.  INTENTIONAL INFLICTION OF
                                                 EMOTIONAL DISTRESS
18 |

19 |

20 |

21 |        Plaintiff Santosha Padfield ("Plaintiff") alleges:

22 |                **FACTS COMMON TO ALL CAUSES OF ACTION**

23 |        1.     The events giving rise to this action occurred in the County of Los Angeles,

24 | California.

25 |        2.     Plaintiff is a natural person who currently resides in the State of Tennessee.

26 |        3.     Plaintiff's gender is female.

27 |        4.     Plaintiff's race is African-American.

28 |

·1·

**COMPLAINT FOR DAMAGES**

1    5.    Defendant Department of Consumer Affairs, Contractors State License Board
2    ("CSLB") is a California state agency and public employer.

3    6.    Defendant Steven Skogebo ("Skogebo") is an individual who at all relevant times
4    was a supervisory employee of CSLB.

5    7.    Plaintiff is informed and believes and on that basis alleges that Skogebo resides in
6    the County of Los Angeles.

7    8.    The true names and capacities, whether individual, corporate or otherwise, of
8    defendants DOES 1-25, inclusive, are unknown to Plaintiff who therefore sues said defendants
9    by such fictitious names. Plaintiff will amend this Complaint to identify the true names and
10   capacities of DOES 1-25, inclusive, when ascertained. Plaintiff is informed and believes and
11   thereon alleges that each defendant named herein as a DOE was responsible in some manner for
12   the occurrences and damages alleged herein.

13   9.    Plaintiff is informed and believes and on that basis alleges that at all relevant
14   times herein, CSLB employed more than five employees.

15   10.   At all relevant times, Plaintiff was employed as an Enforcement Representative,
16   1, at CSLB. In 2014, she began to report directly to Skogebo.

17   11.   From February 2014 to July 28, 2017, Skogebo subjected Plaintiff to severe,
18   pervasive and unwelcome harassment that included, but is not limited to, the following:

19       a.   referring to Plaintiff's lips as being "full,"

20       b.   writing in an email that she was "hot,"

21       c.   stating that he would love to see her bounce on a trampoline,

22       d.   stating that he loved "dark meat,"

23       e.   telling her that he felt like a piece of meat around her,

24       f.   asking her why black women got together with rich white men,

25       g.   asking her if she always was attracted to white men,

26       h.   asking her what she did for her husband to thank him for jewelry he bought for
27           her,

28       i.   telling her that he wanted them to stay in a hotel together,

2

1   j.   telling her that if she were not married he would make her his wife,

2   k.   suggesting that she had sexual relationships with other supervisors and managers,

3   l.   suggesting that they should engage in sex in the office, and

4   m.   touching her thigh.

5   12.   Plaintiff also overheard Skogebo make sexual or racial comments to other

6   employees.

7   13.   Plaintiff rebuffed Skogebo's advances. In response, he retaliated by abusively

8   criticizing her work performance without any valid basis, by depriving her of wages that she had

9   earned and by attempting to deprive her of time off that she had earned.

10   14.   Other CSLB managers were aware that Skogebo engaged in at least some of the

11   unwelcome, inappropriate conduct directed toward Plaintiff.

12   15.   After enduring this hostile work environment for over three years, Plaintiff made

13   an internal harassment report and left work on a leave of absence. A copy of her written internal

14   complaint is attached as Exhibit A and is incorporated by reference as though stated in full

15   herein. The Department of Consumer Affairs conducted an investigation, concluding, "The

16   investigation revealed violations of DCA policies." A copy of the June 13, 2018 letter from

17   Latania Robinson stating this conclusion is attached as Exhibit B and is incorporated by

18   reference as though stated in full herein.

19   16.   Plaintiff filed an administrative harassment complaint with the Department of Fair

20   Employment and Housing ("DFEH") and has obtained a right-to-sue letter. Copies of these

21   DFEH documents are attached as Exhibit C and are incorporated by reference as though stated in

22   full herein.

23   **FIRST CAUSE OF ACTION**

24   **HARASSMENT – VIOLATION OF FAIR EMPLOYMENT & HOUSING ACT,**

25   **CAL. GOVT. CODE § 12940, et seq.**

26   **AGAINST ALL DEFENDANTS**

27   17.   Plaintiff incorporates by reference paragraphs 1 through 16, inclusive, of this

28   Complaint as though they were stated in full herein.

3

**COMPLAINT FOR DAMAGES**

18.     During Plaintiff's employment, Skogebo made continuous and pervasive unwelcome comments directly to Plaintiff regarding her race and her gender.  Skogebo made other unwelcome comments regarding race and gender to others that Plaintiff overheard.  In addition, Skogebo made sexual innuendos and propositions to Plaintiff and touched her inappropriately without her consent.

19.     When Plaintiff rebuffed Skogebo's advances or failed to acknowledge his comments in a positive manner, Skogebo became abusive and unreasonably criticized Plaintiff's work performance with no valid basis.  He also attempted to deprive Plaintiff of time off that she had earned and deprived her of wages that she had earned.

20.     Other CSLB managers were aware of Skogebo's inappropriate conduct but failed to take any corrective action until Plaintiff made a formal internal complaint.

21.     Defendants' misconduct was continuous, severe and pervasive and created a hostile work environment, to the point that Plaintiff was compelled to take a leave of absence from her employment and, ultimately, to leave her job position.  Defendants' misconduct was motivated specifically by Plaintiff's race and/or gender.

22.     Plaintiff has suffered damage and injury as a proximate result of Defendants' harassment, including lost wages, compensation and benefits, as well as anxiety, upset, anguish, humiliation and emotional distress, all in an amount that exceeds the unlimited jurisdiction of this Court, to be proved at trial.

23.     Defendants engaged in the foregoing discriminatory conduct with malice, fraud or oppression and in reckless disregard of Plaintiff's rights under California law, and/or Defendants condoned or approved of the malicious, fraudulent, or oppressive conduct of its managerial employees, including the harassment of Plaintiff.  Plaintiff thus is entitled to punitive damages pursuant to Section 3294 of the California Civil Code.

24.     Plaintiff has exhausted her administrative remedies by filing a Complaint with the Department of Fair Employment & Housing and obtaining a right-to-sue notice.

4

1
2
3
4

SECOND CAUSE OF ACTION

FAILURE TO TAKE CORRECTIVE ACTION – VIOLATION OF FAIR
EMPLOYMENT & HOUSING ACT, CAL. GOVT. CODE §§ 12940, *et seq.*
AGAINST CSLB AND DOES 1-10, INCLUSIVE

5   25.   Plaintiff incorporates by reference paragraphs 1 through 24, inclusive, of this
6   Complaint as though they were stated in full herein.

7   26.   CSLB's agents or supervisors were aware that Skogebo engaged in unwelcome
8   conduct of a sexual and/or racial nature toward CSLB employees, including but not limited to
9   Plaintiff. However, Defendants failed to take corrective action.

10   27.   Defendants' failure to take corrective action violates Section 12940(j) of the
11   California Government Code.

12   28.   Plaintiff has suffered damage and injury as a proximate result of Defendants'
13   failure to take corrective action, including lost wages, compensation and benefits, as well as
14   anxiety, upset, anguish, humiliation and emotional distress, all in an amount that exceeds the
15   unlimited jurisdiction of this Court, to be proved at trial.

16   29.   Defendants engaged in the foregoing discriminatory conduct with malice, fraud or
17   oppression and in reckless disregard of Plaintiff's rights under California law, and/or Defendants
18   condoned or approved of the malicious, fraudulent, or oppressive conduct of its managerial
19   employees, including their failure to take corrective action, which in turn led to continued
20   harassment of Plaintiff. Plaintiff thus is entitled to punitive damages pursuant to Section 3294 of
21   the California Civil Code.

22   30.   Plaintiff has exhausted her administrative remedies by filing a Complaint with the
23   Department of Fair Employment & Housing and obtaining a right-to-sue notice.

24
25
26
27
28

5

## THIRD CAUSE OF ACTION

## FAILURE TO PREVENT HARASSMENT – VIOLATION OF FAIR EMPLOYMENT &

## HOUSING ACT, CAL. GOVT. CODE §§ 12940, *et seq.*

## AGAINST CSLB AND DOES 1-10, INCLUSIVE

31.     Plaintiff incorporates by reference paragraphs 1 through 30, inclusive, of this Complaint as though they were stated in full herein.

32.     Defendants were obligated by the Fair Employment and Housing Act, Cal. Govt. Code § 12940(k), to take all reasonable steps necessary to prevent harassment in the workplace from occurring.

33.     Defendants failed to take all reasonable steps necessary to prevent harassment of Plaintiff on the basis of her race and/or gender from occurring and thus have violated Section 12940(k) of the California Government Code.

34.     Plaintiff has suffered damage and injury as a proximate result of Defendants' failure to prevent harassment, including lost wages, compensation and benefits, as well as anxiety, upset, anguish, humiliation and emotional distress, all in an amount that exceeds the unlimited jurisdiction of this Court to be proved at trial.

35.     Defendants engaged in the foregoing conduct with malice, fraud or oppression and in reckless disregard of Plaintiff's rights under California law, and/or Defendants condoned or approved of the malicious, fraudulent, or oppressive conduct of its managerial employees, including the failure to prevent harassment of Plaintiff, which in turn led to continued harassment of Plaintiff.  Plaintiff thus is entitled to punitive damages pursuant to Section 3294 of the California Civil Code.

## FOURTH CAUSE OF ACTION

## RETALIATION – VIOLATION OF FAIR EMPLOYMENT & HOUSING ACT, CAL.

## GOVT. CODE §§ 12940, *et seq.*

## AGAINST CSLB AND DOES 1-10, INCLUSIVE

36.     Plaintiff incorporates by reference paragraphs 1 through 35, inclusive, of this Complaint as though they were stated in full herein.

6

37.     The Fair Employment & Housing Act, Cal. Govt. Code §§ 12940, *et seq.*, prohibits employers and persons from retaliating against employees who oppose harassment.

38.     Plaintiff opposed Skogebo's harassment by rebuffing his advances and by not responding to his unwelcome racial and sexual conduct in a positive manner.  In response, Skogebo punished Plaintiff by criticizing her job performance without any valid basis, threatening her continued employment, depriving her of wages she had earned, and otherwise engaging in abusive and intimidating conduct toward Plaintiff.

39.     Skogebo's punishment of Plaintiff contributed to her decision to take a leave of absence from her job and, ultimately, to leave her job.

40.     Plaintiff has suffered damage and injury as a proximate result of Defendants' retaliation, including lost wages, compensation and benefits, as well as anxiety, upset, anguish, humiliation and emotional distress, all in an amount that exceeds the unlimited jurisdiction of this Court to be proved at trial.

41.     Defendants engaged in such retaliation with malice, fraud or oppression and in reckless disregard of Plaintiff's rights under California law, and/or Defendants condoned or approved of the malicious, fraudulent, or oppressive conduct of its managerial employees, including the retaliation against Plaintiff.  Plaintiff thus is entitled to punitive damages pursuant to Section 3294 of the California Civil Code.

## FIFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## AGAINST SKOGEBO AND DOES 11-25

42.     Plaintiff incorporates by reference paragraphs 1 through 41, inclusive, of this Complaint as though they were stated in full herein.

43.     Defendants' conduct toward Plaintiff was extreme and outrageous, as it exceeded all bounds usually tolerated in a civilized community. For years, Skogebo subjected Plaintiff to an onslaught of pervasive, severe and unwelcome conduct based on her race and sex.  When Plaintiff rebuffed his advances or failed to acknowledge his comments in a positive manner,

7

1  Skogebo became abusive and unreasonably criticized Plaintiff's work performance with no valid
2  basis.

3      44.    The extreme and outrageous conduct in which Defendants engaged was outside
4  the compensation bargain between Plaintiff and her employer.

5      45.    Defendants engaged in such extreme and outrageous conduct with the intention of
6  causing, or reckless disregard of the probability of causing, Plaintiff to suffer emotional distress.

7      46.    Plaintiff has suffered severe or extreme emotional distress.

8      47.    Defendants' outrageous conduct actually and proximately caused Plaintiff to
9  suffer severe or extreme emotional distress.

10     48.    Defendants engaged in the foregoing extreme and outrageous conduct with
11 malice, fraud or oppression and in reckless disregard of Plaintiff's rights under California law,
12 and/or Defendants condoned or approved of the malicious, fraudulent, or oppressive conduct of
13 their managerial employees.  Plaintiff thus is entitled to punitive damages pursuant to Section
14 3294 of the California Civil Code.

15

16                        **PRAYER FOR RELIEF**

17     Plaintiff requests that judgment be entered in her favor against Defendants and that she be
18 awarded the following relief:

19     1.    Damages for lost wages, compensation, and benefits in an amount to be proved at
20 trial;

21     2.    Damages for anxiety, upset, anguish, humiliation, suffering and emotional distress
22 in an amount to be proved at trial;

23     3.    Exemplary damages in an amount to be proved at trial;

24     4.    Interest as available by law;

25     5.    Reimbursement of recoverable costs of suit, including but not limited to
26 attorneys' fees;

27

28

**COMPLAINT FOR DAMAGES**

6.    Such other and further relief as the Court may deem just and proper.

Date: August 23, 2018

SAGHEB LAW & MEDIATION SERVICES
A Professional Corporation

S. Shane Sagheb
Attorney for Plaintiff
Santosha Padfield

9

# Exhibit "A"

1  XAVIER BECERRA
   Attorney General of California
2  GARY S. BALEKJIAN
   Supervising Deputy Attorney General
3  CATHERINE E. FLORES
   Deputy Attorney General
4  State Bar No. 252240
     300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013
     Telephone:  (213) 269-6502
6    Fax:  (213) 897-1071
     E-mail:  Catherine.Flores@doj.ca.gov
7  *Attorneys for Defendant Department of Consumer*
   *Affairs, Contractors State License Board*
8
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                            COUNTY OF LOS ANGELES
10

11

12

13  **SANTOSHA PADFIELD,**                Case No. BC718897

14                         Plaintiff,    **NOTICE OF FILING OF REMOVAL**

15          v.

16  **DEPARTMENT OF CONSUMER**
17  **AFFAIRS, CONTRACTORS STATE**
    **LICENSE BOARD, a California state**
18  **agency; STEVEN SKOGEBO, an**        Action Filed: August 28, 2018
    **individual; and DOES 1-25, inclusive,**
19
20                        Defendants.

21

22

23      **TO THE CLERK OF THE ABOVE-ENTITLED COURT AND PLAINTIFF:**

24      **PLEASE TAKE NOTICE** that a Notice of Removal of this action was filed in the United

25  States District Court for the Central District of California on or around September 28, 2018.

26      A true and correct copy of the Notice of Removal of Civil Action to Federal Court Under

27  28 U.S.C. sections 1332 and 1441 is attached hereto as Exhibit "1."

28

                                       1

Dated:  September 28, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
GARY S. BALEKJIAN
Supervising Deputy Attorney General

CATHERINE E. FLORES
Deputy Attorney General
*Attorneys for Defendant Department of
Consumer Affairs, Contractors State
License Board*

LA2018502553
53083892.docx

NOTICE OF FILING OF REMOVAL (BC718897)



ATTACHMENT C

# EQUAL EMPLOYMENT OPPORTUNITY OFFICE
## SEXUAL HARASSMENT/ DISCRIMINATION
## COMPLAINT FORM

**PLEASE NOTE:** This form must be filed with the Department of Consumer Affairs (DCA) Equal Employment Opportunity (EEO) Office within **365 days** of the last incident of discrimination.  Submit form to DCA EEO Office, 1625 North Market Blvd., Suite N-330, Sacramento, CA 95834.

## I.   COMPLAINANT INFORMATION:

| | |
|---|---|
| *Name:* Santosha T. Padfield | *Classification:* Enforcement Representative, I |
| *Email Address:* beautytoons@yahoo.com | *Office Unit or Section:* CSLB-Oxnard/Valencia |
| *Work Address:* 1001 N. Rice Avenue #210 Oxnard, CA 93036 | *Work Telephone:* (805)   288-3318 |
| *Home Address:* 1690 Loma Dr. | *Home Telephone:* (310)   991-1175 |
| *City, State, Zip Code:* Camarillo, CA 93010 | *Immediate Supervisor:* Steven O. Skogebo |

## II.   BASIS OF DISCRIMINATION: Check appropriate box (es).

| | | | |
|---|---|---|---|
| ☐ Age (40 years or older) | ☐ Medical Condition | ☐ Pregnancy | ☑ Sexual Harassment/ Quid Pro Quo or Hostile Work Environment |
| ☐ Ancestry | ☐ Marital Status | ☐ Race | ☐ Sex (Gender) |
| ☐ Color (Skin color) | ☐ National Origin | ☐ Religion | ☐ Sexual Orientation |
| ☐ Disability | ☐ Political Affiliation/Opinion | ☐ Retaliation | ☐ Vietnam Era Veteran |
| ☐ Harassment (Specify Basis) _____ | | | ☐ Other Military Status |
| | | | ☐ Genetic Information |

## III.   PERSON (S) RESPONSIBLE FOR THE ALLEGED DISCRIMINATION:

| NAME | WORK LOCATION | PHONE NUMBER |
|---|---|---|
| Steven O. Skogebo | 28460 Avenue Stanford #120 Valencia, CA 91355 | (661)904-2442 (cell) |
| | | |
| | | |

## IV.   DATE OF FIRST INCIDENT OF DISCRIMINATION:

| DAY | MONTH | YEAR |
|---|---|---|
| 13 | 02 | 2014 |

## V.   DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE:

DCA 08K-60 (Rev. 12/11)

-1-

DAY _28_   MONTH _07_   YEAR _2017_

**VI.   DESCRIPTION OF DISCRIMINATION:** *Describe fully the alleged discriminatory act and/or violation.  Provide what reason or evidence you have to support your feeling that discrimination occurred.   Please include dates. (Attach additional pages, if necessary.)*

Steven Skogebo has created a hostile work environment by sexually harassing me

in the form of unwanted sexual comments, invitations and touching.

**VII.   PERSON (S) WHO HAVE INFORMATION OR KNOWLEDGE OF THE ALLEGED DISCRIMINATION:** *List name (s) of witness (es).*

| NAME | WORK LOCATION | PHONE NUMBER |
|---|---|---|
| Amanda Berg | 28480 Avenue Stanford #120 Valencia, CA 91355 | (661) 219-0074 |
| Jennifer Newman | 28480 Avenue Stanford #120 Valencia, CA 91355 | (661) 219-0066 |
| Colleen Rebol | 28480 Avenue Stanford #120 Valencia, CA 91355 | (661) 219-0068 |
| Shelbie Brooks | CDC Parole/formerly worked in the CSLB Valencia office | (323) 793-4992 |

**VIII.   REMEDY REQUESTED:** *Describe your desired outcome.*

It is hoped the agency will be held accountable for allowing Steve Skogebo to harass female employees and create

a hostile work environment for years without fear of retribution.  Additionally, the agency has failed to remove him from his position of authority.

Rather than address the past complaints of sexual harassment, the agency has allowed him to involuntarily transfer women who complained of his

inappropriate behavior.  Furthermore, past reported issues were handled in house by CSLB and on at least one occasion was put in the hands of a retired annuitant

who had no history of investigating such sensitive matters.  Instead of eradicating the inappropriate behavior, the agency's lack of action has emboldened Steve to continue to

harass employees.  This in turn has sent the loud and clear message that coming forward  will only result in an involuntary transfer or the situation being ignored.

**IX.   COMPLAINANT SIGNATURE:**

*I believe the foregoing to be true and correct to the best of my knowledge.*

_____                    _08/23/17_
Complainant's Signature                                     Date

DCA 08K-60 (Rev. 12/11)

- 2 -

# EQUAL EMPLOYMENT OPPORTUNITY OFFICE SEXUAL HARASSMENT/ DESCRIMINATION COMPLAINT FORM

## PAGE 2 CONTINUED

## VI. DESCRIPTION OF DISCRIMINATION:

Steve has continually sexually harassed me. While I am not his only victim, I have decided I will not tolerate his behavior any longer.

Though I am aware he feels protected because his pattern of behavior is known and tolerated, I will not be silent any longer.

On 12/11/13 I was called in to the Valencia office to speak with Steve regarding transferring to Valencia. He gave me the run down about current staff, saying that he finally got the "kind of staff" he wanted and that with the exception of Greg Alexander, everything was perfect. He also added that he successfully got someone fired from state service. I wasn't sure of his motive for telling me that but I soon realized he was trying to intimidate me.

My first impression of his relationship with staff was how unbalanced it was. He controlled every aspect, including insisting that everyone eat lunch together and at the same time every day, participate in potlucks, pose for pictures (that he would later send to management, giving the impression of a perfect team). He openly ridiculed staff in meetings, shaming them in front of peers regarding aged cases.

I recall several incidents where he openly criticized Greg for having aged cases and put him on the "hot seat", forcing commitments about when the case would be closed and then ridiculing him in front of everyone for not closing the case.

Steve often makes inappropriate comments. The first one was after my 2nd staff meeting in Valencia. On February 13, 2014 cake had been served during the meeting and afterwards, Shelbie, Steve and I remained in the lunch room. Steve needed a fork for his cake and I handed one to him along with a napkin. He said, "Thank you. If you were not married, I would make you my wife." I was shocked and could not believe he made the comment. Still to this day I don't know if Shelbie heard him because we have never spoken about it.

Once Steve got comfortable with me, he asked me what I did for Jessie Flores to cause him to go over his (Steve's) head to get me transferred to the Valencia office. He chided me saying, "Are you sure you and Jessie didn't have anything going on?" This was probably the first inappropriate comment that was sexual in nature. He's made this comment twice since I have worked for him. I don't recall the date he made the first

1

comment but I remember the 2nd time being on 01/26/17. On that day, I had come to the Valencia office to submit some closures. I don't remember what sparked the conversation but the name of one of my past supervisors (Kim Vanbuskirk) came up. I spoke positively about Kim and remarked that he was one of the best supervisors I have ever had. Steve's eyebrows raised as he said, "What did you and Kim have going on? Why did you like him so much?" He then went on to say, "I'm still convinced you and Jessie had something going on." I very seriously told Steve that he was ridiculous for making such a statement about Kim who was old enough to have been my father. I also told him that Jessie is a stand- up guy and that his comment about him was ridiculous also. Steve just smiled and said, "Uh huh, I'll bet".

In the beginning Steve joked a lot and so, although his behavior was appalling, I shrugged it off and dismissed it as joking. He has teasingly looked at me and accused me of "checking him out" or telling me he feels like a piece of meat around me. He was clearly joking and so the comments were laughed at or ignored.

As time went on, Steve became more and more brash and his demeaning comments were brazenly said in front of other staff.

On Friday, October 2, 2015 when I first returned to the Valencia office after having my braces removed, he put his face next to mine and said, "Isn't she cute? Has Justin kissed you yet? I'll bet your teeth feel nice and smooth. Look at those full lips." Jennifer and Amanda were both present and this comment was made at the front of the office where their cubicles are. Amanda later remarked that she believed that Steve must "have a thing" for Black women because he only makes those kinds of comments to me and Shelbie. She added that he never makes those comments to any of them. I shrugged and told her that I just ignore him.

Later that day he approached my cubicle and remarked, "Do you want me to send everyone home early so that we can be alone?" I told him that I did not want him to send everyone home and told him I was trying to get my work done. This was said so that he would leave my work area.

My husband buys me nice jewelry as gifts and on February 18, 2015 Steve looked at me and while shaking his head made the statement, "I'll bet you do some very nice things to get that jewelry. What did you do to thank him?" In shock, I just walked away from him, leaving him standing at the printer.

On or about September 25, 2015 we were at an after work celebration for Amanda's upcoming wedding. Since I live a distance away from where the dinner was held, I got a hotel room in Valencia. Steve's wife, Heather Skogebo was also present at this event and he still managed to sneakily be inappropriate. He approached me and said, "So I heard you got a hotel room. Why didn't you tell me?" I asked, "Why would I tell you that?" He said, "Maybe I could have come and visited you. You know I live very close." I immediately looked in the direction of his wife who was having a conversation with Robert Morales and his wife. She didn't hear him and neither did anyone else.

2

This was not the last time he would mention staying in a hotel room with me.  He mentioned it again when I complained about the cases up the coast being so far.  He said, "Eddie (past employee) used to get a hotel room when he went up the coast.  You could do the same and I could go with you."  These comments were made on May 20, 2015 and March 14, 2016.  The first time he said it, he reacted to my reaction by saying, "Oh, did I go too far?"  I told him he had and that he was bold.  He just laughed and turned red faced.

On or about October 9, 2016 Steve addressed me after a heated discussion we had regarding me taking excess time.  I had worked a long week traveling up the coast for work assignments and had acquired excess time.  He told me, "No one else has excess time so why do you?"  I told Steve that no one else takes their excess time because they are afraid to claim it.  He was trying to get me to not take excess time on my office day, which was a Friday and to carry it over into the next week.  When I didn't back down, he said he was taking the matter to Missy.  He then told me that I was angry, venomous and "in his face".  His face was red, lips tight and he had a disgusted look on his face and told me, "My feelings for you have cooled."

I believe it was Friday, October 30, 2015 when Steve approached me to tell me that he and Missy had decided to allow me to pick a different office day so that I didn't have to come in with Greg on Fridays any longer.  I told him "thank you" and he said, "I do like you.  You're a pain in the ass in my staff meetings but I do like you.  Sometimes, I just want to take you down."  I asked what he meant by "take me down" and asked if he meant beat me up.  He said, "You know...as in take you down for being so mouthy."  He gestured that he was pushing me down to the ground.  At the time, I didn't give much thought to the literalness of his comment but later realized that his comment intimated rape or power and control...domination.

During a Thanksgiving potluck (November 2015) Steve and staff were eating in the lunch room and he had turkey meat piled on his plate.  Colleen Rebol said, "Steve, I've never seen you eat dark meat before.  You like dark meat?"  Steve answered, "Yes, I love dark meat."  And he immediately looked at me.  Amanda kicked me under the table, signifying that she had heard the comment.  My face burned.  Amanda later said, "I told you!"  Even though no one else at the table (besides Amanda) appeared to notice the reference he made to my skin being "dark meat", I felt humiliated.

Sometime in July 2016 and prior to Shelbie leaving, Steve commented to me (in the Valencia lunch room) that she had told him he was invading her personal space.  He remarked, "See, you take my joking and go along with me but she (Shelbie) told me I was in her personal space.  I don't even talk to her anymore.  Personally I think she's batting for the same team."  This comment was made to insinuate that Shelbie is a lesbian.  I said, "So because she doesn't want you in her space, she's gay?"  His reply as he shrugged his shoulders, "I'm just saying..."  There was a definite shift in his treatment toward Shelbie.  He would later remark that the staff didn't even give her a going away

3

party because they didn't really like her. Little did he know, we did have a party for her that he was not invited to participate in.

I don't remember the exact date but it was a training where Maha from Case Management had come to the Valencia office and Doug Galbraith and Mike Franklin had flown in. They were not around and it was after the training. Someone had brought Portos (bakery) to that training and Steve sat across from me and said, "Eat one, I want to see your lips."

On August 15, 2016 I called Steve at the Valencia office and told him that the car windows to three state vehicles had been broken. While I assessed the damages, I got stung by a bee right in the front of my neck. I was upset and frustrated when I called Steve and he said, "Aw, I wish I was there so I could kiss it for you." I said, "Steve, why do you feel you can make these crazy comments to me?" He laughed and said, "I should stop it, I know you are upset. That's just me being a bad boy but seriously, after Highway Patrol comes to take the report and we do our agency report, you can request the rest of the day off".

Steve even made a comment in front of Missy at the Valencia office. I believe it was February 2017 when Missy was speaking to me, Jennifer and I believe Amanda was present for a portion of the story. Missy was talking about becoming angry at her husband for shrinking some of her clothes in the dryer. The conversation went into bad moods and hormones and Steve entered the room. I mentioned that my sister thinks I'm in perimenopause. Steve said, "Who you? You're a young thing!" Jennifer loudly cleared her throat warning Steve of the comment and he said, "What? I just said she was young!" Missy imitating Steve said, "No, you said, you're a young thing!" and added emphasis to the "way" in which the comment was said. Steve just laughed and Missy did too. She didn't appear to realize this was no isolated incident.

On March 8, 2017 I returned from the field and Steve was exiting the stairwell leading down from the Oxnard office. The look on his face was one of fury. I said hello and he said through tight lips and a red face, "you didn't tell me about that sign!" Confused, I asked what sign he was talking about. He said, "The sign on Greg's desk. Were you all laughing at me?" He was upset about a sign Greg's wife had bought him that read, "Retirement; God's gift for never having strangled your boss." It was weird that he was so angry at me and felt as though I had betrayed him. Yet, in the same conversation he said, "By the way, I saw the picture on your desk of when you were slimmer. The things I would have done to you." He shook his head with a serious look on his face.

On April 3, 2017 I was discussing my son's birthday party which had occurred over the weekend. I was in the front of the office talking to Jennifer and Amanda when Steve joined the conversation. He asked where the party was held and I told him that it was at a place in Simi Valley called Scooter's Jungle. He said, is that one of those trampoline places. I told him it's like a bunch of bounce house type play areas. He remarked, "I would love to see you bouncing on a trampoline." I just walked away from him and went into the conference room. Amanda said, "Creepy. Didn't we just do that sexual

4

party because they didn't really like her. Little did he know, we did have a party for her that he was not invited to participate in.

I don't remember the exact date but it was a training where Maha from Case Management had come to the Valencia office and Doug Galbraith and Mike Franklin had flown in. They were not around and it was after the training. Someone had brought Portos (bakery) to that training and Steve sat across from me and said, "Eat one, I want to see your lips."

On August 15, 2016 I called Steve at the Valencia office and told him that the car windows to three state vehicles had been broken. While I assessed the damages, I got stung by a bee right in the front of my neck. I was upset and frustrated when I called Steve and he said, "Aw, I wish I was there so I could kiss it for you." I said, "Steve, why do you feel you can make these crazy comments to me?" He laughed and said, "I should stop it, I know you are upset. That's just me being a bad boy but seriously, after Highway Patrol comes to take the report and we do our agency report, you can request the rest of the day off".

Steve even made a comment in front of Missy at the Valencia office. I believe it was February 2017 when Missy was speaking to me, Jennifer and I believe Amanda was present for a portion of the story. Missy was talking about becoming angry at her husband for shrinking some of her clothes in the dryer. The conversation went into bad moods and hormones and Steve entered the room. I mentioned that my sister thinks I'm in perimenopause. Steve said, "Who you? You're a young thing!" Jennifer loudly cleared her throat warning Steve of the comment and he said, "What? I just said she was young!" Missy imitating Steve said, "No, you said, you're a young thing!" and added emphasis to the "way" in which the comment was said. Steve just laughed and Missy did too. She didn't appear to realize this was no isolated incident.

On March 8, 2017 I returned from the field and Steve was exiting the stairwell leading down from the Oxnard office. The look on his face was one of fury. I said hello and he said through tight lips and a red face, "you didn't tell me about that sign!" Confused, I asked what sign he was talking about. He said, "The sign on Greg's desk. Were you all laughing at me?" He was upset about a sign Greg's wife had bought him that read, "Retirement; God's gift for never having strangled your boss." It was weird that he was so angry at me and felt as though I had betrayed him. Yet, in the same conversation he said, "By the way, I saw the picture on your desk of when you were slimmer. The things I would have done to you." He shook his head with a serious look on his face.

On April 3, 2017 I was discussing my son's birthday party which had occurred over the weekend. I was in the front of the office talking to Jennifer and Amanda when Steve joined the conversation. He asked where the party was held and I told him that it was at a place in Simi Valley called Scooter's Jungle. He said, is that one of those trampoline places. I told him it's like a bunch of bounce house type play areas. He remarked, "I would love to see you bouncing on a trampoline." I just walked away from him and went into the conference room. Amanda said, "Creepy. Didn't we just do that sexual

4

harassment training?" She later told me, "I don't see how you stomach some of the things he says to you."

Amanda often told Steve to his face that he was creepy. He would just laugh it off.

Steve's comments were made to me in private, in front of staff (Colleen, Amanda and Jennifer). He never made those types of comments (to me) in front of Greg, Maria, Sergio or Veronica. It's as though he chose his audience.

Steve's comments regarding sex have not only been made toward me. He's asked Amanda how she "thanked" her husband for helping with house work, about a few months back, he assisted Jennifer in putting a bandage on her elbow and had to kneel down on his knees. As he was getting back up he said, "Oh, I don't know if I should stand up." He then said, "Was that too much Jennifer?" He said this in reference to having possibly obtained an erection while kneeling down to help her. Jennifer's response was, "No, you brushed my boob but I'm okay." Steve (red faced) remarked, "I think I need to go sit down in my office for a while now."

After our April 2017 meeting, Steve cornered me because I openly agreed with Greg regarding a case assignment issue. He told me that it angers him that I "side" with Greg during staff meetings. When I told Steve that I was not siding with Greg and was just exercising my right to an opinion, he remarked, "Well to me you are taking his side. I wish that you would just tell me in private that you agree with him and not in front of other staff and especially not in front of Greg." He still holds this against me.

In May 2017 I communicated to Steve on several occasions that I was stressed by the current workload. He would just laugh it off and tell me that he knows that I can accomplish the agency goals. During a phone conversation on May 19, 2017 I was discussing a particularly difficult case with Steve and he remarked, "What do you want me to give you for closing this case?" I said, "I want you to stop giving me cases that should be assigned to an ER II with unreasonable timeframes for closing them." Steve became irritated and the phone call was interrupted. We were having phone problems at the time and I believe the interruption was due to static.

Recently I called Steve at the Valencia office. It was after lunch and he said, "You know I wish you had been here because we got into an interesting conversation about Serena Williams. She was on the news for posing nude while she's pregnant. I was curious to know your perspective on that as an African American woman. She's married to some super rich White man. What is it with all you Black women getting with all these rich White men?"

Steve often made comments such as, "have you always been attracted to White men?" He asked this in reference to my husband being White. He would then comment that I probably would not have given him (Steve) the time of day because he didn't have enough money. He always made references to himself in this way.

On June 26, 2017 Steve told me that he didn't like that I had worked all day and didn't really spend any time with him. He said this in a taunting way referencing my quiet mood as I was trying to get work done. Jennifer later stated, "Do you ever feel like just smacking him in his face?"

I've heard that Steve has made inappropriate comments to Shelbie too but I never personally witnessed them. There is another person that has confided that he has sexually harassed her for years. However, she is paralyzed by fear and will likely never say anything.

I'm doubtful that any of the staff that have witnessed Steve's comments and or experienced them will speak up due to fear of retaliation. Even the staff that seem to be his most loyal are not loyal. They fear him and perceive that management will not protect them nor hold him accountable.

Steve has created a hostile work environment due to his bullying behavior and the pressure he puts on some staff regarding the closure quota. He has demanded that Oxnard staff travel over three house (one way) up the coast and has stated, "You go up for one case and come back. No going up there for two cases at a time and you will not receive overtime for it either." When it was argued that the drive was more than three hours one way, Steve said, "3 hours to get there, 1 hour for the interview and 3 hours to get back. That's plenty of time." Steve is unreasonable and outright unfair. Missy, in an attempt to address the issue, confirmed that staff can request overtime for case assignments up the coast. Steve was furious that I spoke up in a meeting and told Missy that he previously said we could not claim overtime.

Steve is also angry and ridicules staff for using excess time that they've accumulated working cases. As a result, some staff don't claim their excess time and donate long hours during the week.

On July 10, 2017 Steve was discussing the aged case District log with me. I casually mentioned having seen our former co-worker Lydia Patron. He asked if she was still overweight, noting that she had begun to put on lots of weight prior to retiring. He then said, "You know she is beautiful. Although I think you're perfect the way you are and I always tell you that you don't need to lose weight, you would be striking if you did. I'll bet she would be strikingly gorgeous if she lost weight too." It's almost as though he could never just have a normal conversation without inserting a comment that was demeaning.

In a July 13, 2017 meeting between Missy and Greg. Steve showed up to the Oxnard office unbeknownst to Greg and sat in on the meeting. Missy was there to hear Greg out about issues he was having and tensions between he and Greg. Greg said that he felt Steve wanted him to die. He later sent Missy an email pointing out Steve's animosity and Missy never even responded.

On July 27, 2017 while I was working in the Valencia office, Steve put a Tootsie pop (sticker) on the desk (Robert's cubicle) and said, "Here, suck on that." He quickly walked back to his office.

On July 28, 2017 Steve was working in the Oxnard office and Maria and I were both present. He was having problems with a calculator on his desk and asked if I knew how to work it. I walked into his cubicle and I tried to but could not get it to work. I called Maria and she came into the cubicle, it was a tight space and Steve's hand brushed my thigh. I didn't think it was intentional at first because we were all huddled in trying to figure out the calculator but then he did it again and tapped his finger on my thigh. I jumped when he did it a 2nd time and looked at Maria who did not appear to notice. It was at that moment that I realized Steve was getting more and more bold.

Steve has lurked about my desk, looking over my shoulder, remarking on pictures in my phone. He's often commented, "You know we are alone back here." This comment was made because my seating assignment was in the rear of the office. The printer he prints to is adjacent to the desk I'm supposed to sit at.

I have not sat at my desk assignment in Valencia for well over six months. Because Steve lurks about and sometimes stands directly over my seat without me even knowing he's there, I primarily work in the large conference room where arbitrations are held or I sit at Robert's old desk. Among other reasons, I do this so that I am not isolated at the rear of the office and so that I can see Steve when he is approaching. Steven has often come behind my chair and massaged my shoulders as I worked.

I've spoken up to Steve in the past and at times have bitten my tongue to avoid unnecessary confrontations. I've endured the sexual harassment because I didn't want to make my work environment even more stressful by confronting Steve or complaining to management and being humiliated when nothing happened. I also heard that Steve has had people involuntarily transferred out of his unit for complaining about him.

Friday, July 28, 2017 was my emotional breaking point. When Steve and I got into a heated discussion regarding an email he sent about the legal closure deadline, I just became deflated and felt like my efforts were in vain. Sometimes I feel like its useless meeting his demands because it's never enough. Missy was even copied on the emails and I called to speak to her. I cried as I relayed my frustrations and she remarked that Steve was out of line. She said she would talk to him but a week went by and I heard nothing from Missy. Steve told staff that he was outraged that I had gone to his boss. He remarked that although she had not spoken to him yet, he would smooth things out with her. He also told staff that he didn't want me on his team in the first place because he knew how I was.

I don't know if Steve just doesn't respect Missy as his manager or if they are in cahoots. I do know that I called Missy and she didn't even speak to Steve or follow up with me regarding those emails.

Since the July 28th incident, I have been weepy, have a tightness in my shoulders and back and lack concentration.

I have worked in State service for 17 years. During that time I have had several supervisors, some better than others. I have never experienced the lack of professionalism from a supervisor that I have witness and experienced under Steve.

Steve's abuse of power has ranged from ostracizing staff for not participating in potlucks or posing for group pictures to inappropriate sexual comments and black listing me and Maria for agreeing with the staff member he (admit-tingly) hates, Greg Alexander.

It's one thing for a supervisor to expect excellence from his staff but when the supervisor uses bullying tactics, intimidation and ostracism to demand performance, it's unacceptable. Steve has made it clear that upper management, including his direct supervisor has his back. He has openly stated that the Valencia staff is favored. This has been confirmed when just last year a frustrated Maria Gonzales mustered up courage to complain to Missy about Steve's bullying behavior. Steve again tried to sit in on that meeting and when Missy left, Steve told staff that Missy told him everything that Maria had said. His treatment of Maria was awful and cold after that. In fact, she is still paying for it. He even refereed to her as a backstabbing bitch during a recent conversation with me. (July 13, 2017)

His veiled animosity is obvious to his staff but Steve puts on a good front for management. I hope that someone will take these matters seriously and address his inappropriate behavior.

## VII. PERSON (S) WHO HAVE INFORMATION OR KNOWLEDGE OF THE ALLEGED DISCRIMINATION:

| NAME | WORK LOCATION | PHONE NUMBER |
|------|---------------|--------------|
| Maria Gonzales | 1901 N. Rice Avenue #210 Oxnard, CA 93036 | (805) 288-3314 |
| Veronica Medina | 28480 Avenue Stanford #120 Valencia, CA 91355 | (909) 856-4842 |
| | | |

Note: While Shelbie, Veronica and Maria may not have directly witnessed Steve harassing me, they should be questioned as to his past comments/actions toward them.

## VIII. REMEDY REQUESTED:

It is hoped the agency will be held accountable for allowing Steve Skogebo to harass female employees and create a hostile work environment for years without fear of retribution. Additionally, the agency has failed to remove him from his position of

ADDITIONAL WITNESS LIST FOR CASE #17-30

## Additional Witness:

1. **Carlos Marquez**-He is currently a manager in the Norwalk office. I believe he was Steve's manager when the other sexual harassment issues were reported by the woman in the past.

2. **Maha Abraham**-She is currently a supervisor in the Norwalk/Case Management office. She worked for Steve for years and I believe she had the same type of issues with him. I do not have first hand knowledge of this and I think she would be hesitant/afraid of retaliation also.

3. **Angela Ciccone**-She worked as a clerical person for Steve years ago (during the alleged incidents). She currently works clerical in the West Covina investigation center.

4. **Darlene Cazares**-She is now retired (1-2 years ago). She was one of the woman that reported Steve for sexual harassment and was involuntarily transferred. I do not know her personally. Her telephone number is (909) 869-5477. I don't believe her complaint was ever forwarded to the EEO office.

5. **Georgia Solorzano**-She complained about Steve sexually harassing her and was moved (voluntarily). Her case was "investigated" within CSLB and was never reported to the EEO office. She currently works in the Fresno Swift office. Her work telephone number is (559) 490-0574.

6. **Pauline Holloway**-She is currently on worker's comp. but has an extensive working relationship with Steve. I'm doubtful she has first hand knowledge of my experience with Steve but she may have her own experiences or may have heard about how he sexually harassed others. Her phone number is (818) 314-4834

7. **Maria Gonzales**-She has worked for Steve for about 12 years now. She has personally told me that Steve has made sexual remarks, invitations toward her and has touched/rubbed her back on several occasions. She is the one I refer to as "paralyzed by fear". She definitely fears retaliation and may be VERY hesitant to speak about these experiences. She will be more comfortable speaking of Steve's unfair treatment. I've provided her work number but her personal cell number is (805) 312-5016

8. **Greg Alexander**-He has also worked for Steve for many years. I know he doesn't know about my sexual harassment issues but he may know of others over the years. He works in the Oxnard office and his personal cell number is (805)616-4021. He will want to speak to Steve's unequal treatment of staff but I

1

ADDITIONAL WITNESS LIST FOR CASE #17-30

believe he will speak honestly about any sexual harassment issues if he has knowledge of them. He may be retiring soon.

9. **Brenda Fink**-She has retired but used to work for Steve. She had issues with him but I don't know what they were. I am an associate of hers (occasionally at parties). Her telephone number is (818) 388-4787.

10. **Lydia Patron Arthur**-She used to either work with Steve or for him. She is the one that recently told me about having filed an EEO complaint against him. We did not discuss the scope of her complaint. She is retired and her cell phone number is (805) 279-3378

11. **Jessie Flores**-He has promoted to Assistant to the Chief. He has known Steve for years. I'm not sure what information he can provide about the past cases. I do believe he was Georgia's supervisor when she transferred from Steve's office. He is who I first spoke to at CSLB about my complaint. His office number in the Norwalk office is (562) 345-7671.

I've already provided you with the following witness's names and phone numbers:

1. Amanda Berg (formerly Docken)
2. Jennifer Newman
3. Colleen Rebol
4. Veronica Medina-her personal cell number is (909) 856-4842
5. Shelbie Brooks-previously provided her personal cell. She currently works CDC parole in Lancaster but used to work for Steve.
6. Maria Gonzales-her personal cell number is (805) 312-5016

Note: I do have Amanda, Jennifer and Colleen's personal cell phone numbers but you should try to contact them directly first. I know they will be hesitant to talk and will probably be very upset about me giving their personal numbers out than some of the others. Although, they will not want to openly speak to you if you call their work numbers.

2

# Exhibit "B"

 

STATE OF CALIFORNIA

BUSINESS, CONSUMER SERVICES, AND HOUSING AGENCY  ·  GOVERNOR EDMUND G. BROWN JR.
**EQUAL EMPLOYMENT OPPORTUNITY OFFICE**
1625 N. Market Blvd., Suite N-330, Sacramento, CA 95834
P (916) 574-8220  F (916) 574-8604|  www.dca.ca.gov

DEPARTMENT OF CONSUMER AFFAIRS

June 13, 2018

Santosha Padfield
1690 Loma Drive
Camarillo, CA 93010

Dear Ms. Padfield:

This is to notify you that the DCA Equal Employment Opportunity (EEO) Office has completed its investigation of the allegations of sexual harassment that you filed against Steven Skogebo. The investigation revealed violations of DCA policies. Therefore, the Department will address this matter administratively. However, due to confidentiality and the right to privacy, you will not be notified of the specific actions taken.

You may have the right to file a charge of discrimination with the Department of Fair Employment and Housing (DFEH), or the U.S Equal Opportunity Commission (EEOC). For your convenience, I have enclosed a list of contact information for the above reverenced agencies.

Due to the sensitive nature of the discrimination complaint process and in order to maintain its integrity we ask that you keep the matters discussed in this process confidential. Additionally, please be advised that persons who participate in the discrimination complaint process are protected from retaliation. If you at any time you believe you have been subjected to acts of retaliation because you filed this complaint, please contact me at 916-574-8281.

Sincerely,

*Latania Robinson*

Latania Robinson, Manager
Equal Employment Opportunity Office

cc: EEO File

Enclosure

## OTHER EQUAL EMPLOYMENT OPPORTUNITY RELATED AGENCIES

### STATE AGENCIES

### STATE PERSONNEL BOARD

Appeals Division
801 Capitol Mall
Sacramento, CA  95814

For advice or assistance:
(916) 653-0799
*TDD/TTY (916) 653-1498 or (800) 735-2922

### CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

**Elk Grove Field Office**
2218 Kausen Drive, Ste. 100
Elk Grove, CA  95758
(916) 478-7251

**Los Angeles Field Office**
320 West 4th St., 10th Floor
Los Angeles, CA  90013
(213) 439-6799

**Bakersfield Field Office**
4800 Stockdale Hwy., Ste. 215
Bakersfield, CA  93309
(800) 884-1684

**Bay Area Regional Office**
39141 Civic Center Dr., Ste. 250
Fremont, CA  94535
(800) 884-1684

**Fresno Field Office**
1277 E. Alluvial Avenue, Ste. 101
Fresno, CA 93720
(559) 244-4760

### FEDERAL AGENCIES

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Oakland Local Office**
1301 Clay Street, Ste. 1170-N
Oakland, CA  94612
(800) 669-4000

**Fresno Local Office**
2300 Tulare Street, Ste. 215
Fresno, CA  93721
(800) 669-4000

**San Jose Local Office**
96 N. Third Street, Ste. 250
San Jose, CA 95112
(800) 669-4000

**San Francisco District Office**
450 Golden Gate Ave.
P.O Box 36025
San Francisco, CA 94102-3661
(800) 669-4000

**San Diego Local Office**
555 West Beach Street, Ste. 504
San Diego, CA 92101
(800) 669-4000

**Los Angeles District Office**
Roybal Federal Building 5 West,
255 East Temple St., 4th Floor
Los Angeles, CA 90012
(800) 669-4000

### U.S. DEPARTMENT OF LABOR - WAGE & HOUR DIVISION

**Sacramento District Office**
2800 Cottage Way, Room W-1836
Sacramento, CA  95825-1886
(916) 978-6123
(866) 487-9243

**San Jose Area Office**
96 North 3rd Street, Suite 400
San Jose, CA  95112-7709
(408) 291-7730
(866) 487-9243

**West Covina District Office**
100 N. Barranca St., Suite 850
West Covina, CA 91791
(626) 966-0478
(866) 487-9243

**San Francisco District Office**
90 7th Street, Suite 12-100
San Francisco, CA 94103-6719
(415) 625-7720
(866) 487-9243

**San Diego District Office**
550 Corporate Center
550 West "C" Street, Suite 990
San Diego, CA 92101
(619) 557-5110
(866) 487-9243

**Los Angeles District Office**
915 Wilshire Blvd., Suite 960
Los Angeles, CA 90017-3446
(213) 894-6375
(866) 487-9243

Revised May 2016

Exhibit "C"

1  **COMPLAINT OF EMPLOYMENT DISCRIMINATION**
   **BEFORE THE STATE OF CALIFORNIA**
2  **DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
   **Under the California Fair Employment and Housing Act**
3  **(Gov. Code, § 12900 et seq.)**

4
   In the Matter of the Complaint of
5  Santosha Padfield                                    DFEH No. 201807-02993123

6                                Complainant,

7  vs.

8  Dept. of Consumer Affairs, Contractors State
   License Board
9  28480 Avenue Stanford Suite 120
   Valencia, California 91355
10

11  Steven Skogebo
    28480 Avenue Stanford #120
12  Valencia, California 91355

13                       Respondents

14  _____

15  1. Respondent **Dept. of Consumer Affairs, Contractors State License Board is
    an employer** subject to suit under the California Fair Employment and Housing Act
16  (FEHA) (Gov. Code, § 12900 et seq.).

17  2. Complainant **Santosha Padfield**, resides in the City of **Knoxville** State of
18  **Tennessee.**

19  3. Complainant alleges that on or about **July 28, 2017,** respondent took the following
    adverse actions:
20

21  **Complainant was harassed** because of complainant's race, color, sex/gender,
    sexual harassment- hostile environment, sexual harassment- quid pro quo.
22

23  **Complainant was discriminated against** because of complainant's race, color,
    sex/gender and as a result of the discrimination was forced to quit, reprimanded,
24  denied a work environment free of discrimination and/or retaliation, denied any
    employment benefit or privilege.

25

26

27                                        -1-
                              *Complaint – DFEH No. 201807-02993123*
28
    Date Filed: July 23, 2018

1   **Complainant experienced retaliation** because complainant reported or resisted
    any form of discrimination or harassment and as a result was forced to quit,
2   reprimanded, denied a work environment free of discrimination and/or retaliation,
    denied any employment benefit or privilege.
3

4
    **Additional Complaint Details:** Based on counsel's information and belief,
5   Complainant was subjected to the following:
    From February 2014 to July 28, 2017, Respondents subjected me to unwelcome
6   conduct of a sexual and racial nature that created a hostile work environment. Such
    conduct included, but is not limited to, Steven Skogebo, my supervisor, referring to
7   my lips as being "full," writing in an email that I was "hot," stating that he would love
    to see me bounce on a trampoline, stating that he loved "dark meat," telling me that
8   he felt like a piece of meat around me, asking me why black women got together
9   with rich white men, asking me if I always have been attracted to white men, asking
    me what I did for my husband to thank him for jewelry he bought for me, telling me
10  that he wanted us to stay in a hotel together, telling me that if I were not married he
11  would make me his wife, suggesting that I had sexual relationships with other
    employees, suggesting that we should engage in sex in the office, and touching my
12  thigh. My employer was aware that Mr. Skogebo engaged in at least some of this
    conduct and was aware of similar conduct in which he engaged toward other
13  employees. I also overheard some of his sexual comments directed toward other
14  employees. I rebuffed Mr. Skogebo's advances. In response, he retaliated by
    criticizing my work performance without any valid basis and by depriving me of time
15  off that I had earned. Finally, after enduring this hostile work environment for over
    three years, I made an internal harassment report and left work on a leave of
16  absence. I have since declined to return to work.

17

18

19

20

21

22

23

24

25

26
                                              -2-
27                              Complaint -- DFEH No. 201807-02993123

28  Date Filed: July 23, 2018

VERIFICATION

I, **S Shane Sagheb**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On July 23, 2018, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Toluca Lake, CA**

-3-
*Complaint – DFEH No. 201807-02993123*

Date Filed: July 23, 2018



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR KEVIN KISH

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 | TDD (800) 700-2320
http://www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

July 23, 2018

Santosha Padfield
729 Brixworth Blvd.
Knoxville, Tennessee 37934

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 201807-02993123
      Right to Sue: Padfield / Dept. of Consumer Affairs, Contractors State License
      Board et al.

Dear Santosha Padfield,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective July
23, 2018 because an immediate Right to Sue notice was requested. DFEH will take no
further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

# EXHIBIT 2

1   XAVIER BECERRA
    Attorney General of California
2   GARY S. BALEKJIAN
    Supervising Deputy Attorney General
3   CATHERINE E. FLORES
    Deputy Attorney General
4   State Bar No. 252240
    300 South Spring Street, Suite 1702
5   Los Angeles, CA  90013
    Telephone: (213) 269-6502
6   Fax: (213) 897-1071
    E-mail: Catherine.Flores@doj.ca.gov
7   *Attorneys for Defendant Department of Consumer*
    *Affairs, Contractors State License Board*
8

9                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF LOS ANGELES

11

12

13   SANTOSHA PADFIELD,                    Case No. BC718897

14                          Plaintiff,     **DEFENDANT DEPARTMENT OF
                                           CONSUMER AFFAIRS,**
15              v.                         **CONTRACTORS STATE LICENSE
                                           BOARD'S ANSWER TO COMPLAINT
16                                         FOR DAMAGES**
     **DEPARTMENT OF CONSUMER
17   AFFAIRS, CONTRACTORS STATE
     LICENSE BOARD, a California state
18   agency; STEVEN SKOGEBO, an
     individual; and DOES 1-25, inclusive,
19
                          Defendants.
20                                         Action Filed: August 28, 2018

21

22       Defendant Department of Consumer Affairs, Contractors State License Board

23   ("Defendant") files this Answer to Plaintiff Santosha Padfield's Complaint For Damages (the

24   "Complaint") as follows:

25                          **GENERAL DENIAL**

26       Pursuant to Code of Civil Procedure section 431.30, subdivision (d), Defendant denies

27   generally and specifically each and every allegation contained in Plaintiff's Complaint and the

28   whole thereof, and specifically denies that Plaintiff has been damaged in the sum or sums alleged,

                                           1

1  or in any sum or sums at all, or that Defendant or any agent or employee thereof, committed any
2  wrongful act or omission which caused Plaintiff any injury or damage whatsoever.
3      Defendant alleges the following separate and distinct affirmative defenses:

4  ### FIRST AFFIRMATIVE DEFENSE
5  **(Failure to state a claim)**
6      As to the First, Second, Third and Fourth causes of action, Plaintiff's claims are barred
7  against Defendant because they fail to state the facts sufficient to constitute a cause of action.

8  ### SECOND AFFIRMATIVE DEFENSE
9  **(Statute of limitations)**
10      As to the First, Second, Third and Fourth causes of action, Plaintiff's claims against
11  Defendant are barred because they are not subject to equitable tolling, and are therefore barred by
12  the applicable statutes of limitations, including, without limitation, Code of Civil Procedure
13  sections 339 and 340, and Government Code sections 12960 and 12965.

14  ### THIRD AFFIRMATIVE DEFENSE
15  **(Remedial action)**
16      As to the First, Second, Third and Fourth causes of action, the injuries and damages alleged
17  by Plaintiff were caused without any knowledge or prior notice to Defendant, and once Defendant
18  knew or should have known of the alleged acts of harassment, Defendant took prompt and
19  adequate remedial action that was reasonably calculated to end any of the alleged acts of
20  harassment. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1042.)

21  ### FOURTH AFFIRMATIVE DEFENSE
22  **(Failure to exhaust administrative remedies)**
23      As to the First, Second, Third and Fourth causes of action, Plaintiff's claims are barred
24  against Defendant because Plaintiff failed to exhaust her administrative remedies.

25
26
27
28

DEFENDANT DEPARTMENT OF CONSUMER AFFAIRS, CONTRACTORS STATE LICENSE BOARD'S
ANSWER TO COMPLAINT FOR DAMAGES (BC718897)

## FOURTH AFFIRMATIVE DEFENSE

### (Claims not raised in administrative proceedings)

As to the First, Second, Third and Fourth causes of action, Plaintiff's claims are barred against Defendant to the extent they enlarge upon the acts and omissions stated in the administrative claims filed with the Department of Fair Employment and Housing, if any.

## FIFTH AFFIRMATIVE DEFENSE

### (Unclean hands)

As to the First, Second, Third and Fourth causes of action, each cause of action is barred by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

### (Pre-existing injuries or condition)

As to the First, Second, Third and Fourth causes of action, to the extent Plaintiff suffered from mental or emotional distress or injury, it was the result of preexisting physiological or psychological disorders or alternative causes, and did not result from the acts alleged to have been performed by Defendant, if any.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to avoid or mitigate)

As to the First, Second, Third and Fourth causes of action, Plaintiff's claims are barred, in whole or in part, because Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant, or to otherwise avoid harm, or to mitigate or to reasonably attempt to mitigate her damages, if any, as required by law.

## EIGHTH AFFIRMATIVE DEFENSE

### (Ratification)

As to the First, Second, Third and Fourth causes of action, Plaintiff ratified, accepted and consented to the acts alleged to have been performed by Defendant, if any.

DEFENDANT DEPARTMENT OF CONSUMER AFFAIRS, CONTRACTORS STATE LICENSE BOARD'S
ANSWER TO COMPLAINT FOR DAMAGES (BC718897)

1

## NINTH AFFIRMATIVE DEFENSE

2

### (Collateral source)

3   As to the First, Second, Third and Fourth causes of action, the damages, if any be

4   awarded, must be reduced pursuant to California Government Code section 985, which provides

5   that any judgment entered may be reduced for collateral source payments paid or obligated to be

6   paid for services or benefits that were provided prior to commencement of trial.

7

## TENTH AFFIRMATIVE DEFENSE

8

### (Waiver)

9   As to the First, Second, Third and Fourth causes of action, Plaintiff waived the right to

10  pursue her claims and each of her causes of action by reason of her own actions and course of

11  conduct.

12

## ELEVENTH AFFIRMATIVE DEFENSE

13

### (After-acquired evidence)

14  As to the First, Second, Third and Fourth causes of action, Plaintiff's claims are barred, in

15  whole or in part, by the after-acquired evidence doctrine.

16

## TWELFTH AFFIRMATIVE DEFENSE

17

### (Legitimate purposes)

18  As to the First, Second, Third and Fourth causes of action, Defendant did not engage in

19  the alleged discrimination, harassment, or retaliation as alleged in the Complaint, but even

20  assuming *arguendo* that Defendant did, Defendant would have taken the same employment

21  actions in any event for legitimate, non-discriminatory, non-retaliatory, non-pretextual reasons.

22

## THIRTEENTH AFFIRMATIVE DEFENSE

23

### (Defendant took reasonable care)

24  As to the First, Second, Third and Fourth causes of action, Plaintiff's claims are barred, in

25  whole or in part, because Defendant exercised reasonable care to prevent and promptly correct

26  any alleged harassing, discriminatory, and/or retaliatory conduct, if any.

27

28

DEFENDANT DEPARTMENT OF CONSUMER AFFAIRS, CONTRACTORS STATE LICENSE BOARD'S
ANSWER TO COMPLAINT FOR DAMAGES (BC718897)

1

## FOURTEENTH AFFIRMATIVE DEFENSE

2

### (Exclusive remedy under Labor Code sections 3600 *et seq.*)

3      As to the First, Second, Third and Fourth causes of action, Plaintiff is barred from, and

4  has waived, any recovery for any physical or emotional injury or distress, to the extent that

5  Plaintiff has failed to pursue and exhaust her remedies, if any, under the California Workers'

6  Compensation Act, California Labor Code sections 3600 *et seq.*

7

## FIFTEENTH AFFIRMATIVE DEFENSE

8

### (Adequate policies)

9      As to the First, Second, Third and Fourth causes of action, Plaintiff's claims are barred, in

10  whole or in part, because at all times relevant to the Complaint, Defendants had in place a policy

11  to prevent discrimination, harassment, and retaliation in the workplace and made good-faith

12  efforts to implement and enforce that policy.

13

## SIXTEENTH AFFIRMATIVE DEFENSE

14

### (Mixed motive)

15      As to the First, Second, Third and Fourth causes of action, Plaintiff's Fair Employment

16  and Housing Act claims should be precluded, or in the alternative reduced, under the mixed

17  motive doctrine.

18

## SEVENTEENTH AFFIRMATIVE DEFENSE

19

### (Punitive Damages)

20      As to the First, Second, Third and Fourth causes of action, to the extent that the damages

21  claimed in the Complaint are punitive, Defendant is not liable pursuant to Government Code

22  section 818.

23

## EIGHTEENTH AFFIRMATIVE DEFENSE

24

### (Additional defenses)

25      Discovery in this case is ongoing and Defendant currently has insufficient knowledge or

26  information on which to form a belief as to whether it has additional, as yet unstated, defenses

27  available.  Defendant reserves the right to assert additional affirmative defenses in the event

28  discovery indicates that they would be appropriate.

5

WHEREFORE, Defendant prays that:

1. Judgment be rendered in favor of Defendant and against Plaintiff;

2. Plaintiff take nothing by way of the Complaint;

3. Defendant be awarded costs of suit incurred herein;

4. Defendant be awarded attorney's fees pursuant to the Fair Employment and Housing Act (Government Code section 12965, subdivision (b)); and

5. Defendant be awarded such other and further relief as the Court may deem necessary and proper.

Dated: September 26, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
GARY S. BALEKJIAN
Supervising Deputy Attorney General

CATHERINE E. FLORES
Deputy Attorney General
*Attorneys for Defendant Department of Consumer Affairs, Contractors State License Board*

LA2018502553
53082068.docx

DEFENDANT DEPARTMENT OF CONSUMER AFFAIRS, CONTRACTORS STATE LICENSE BOARD'S
ANSWER TO COMPLAINT FOR DAMAGES (BC718897)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Santosha Panfield v. Department of Consumer Affairs, Contractors State License Board, et al.**

No.:   **BC718897**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On <u>September 27, 2018</u>, I served the attached **Defendant Department of Consumer Affairs, Contractors State License Board's Answer to Complaint for Damages** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Suite 1702, Los Angeles, CA  90013, addressed as follows:

S. Shane Sagheb, Esq.
Sagheb Law and Mediation Services
5950 Canoga Ave., Suite 130
Woodland Hills, CA  91367
Attorney for Plaintiff

Calvin House, Esq.
Gutierrez, Preciado & House
3020 E. Colorado Blvd.
Pasadena, CA  91107
Attorney for Defendant

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 27, 2018, at Los Angeles, California.

|  |  |
|---|---|
| Yvette Wright | Signature |
| Declarant | |

LA2018502553
53085458.docx

# EXHIBIT 3

# COPY

<div style="text-align: right">

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 2 6 2018

Sherri R. Carter, Executive Officer/Clerk
By: Ricardo Perez, Deputy

</div>

1  CALVIN R. HOUSE (SBN 134902)
   BARUCH Y. KREIMAN (SBN 306328)
2  GUTIERREZ, PRECIADO & HOUSE, LLP
   3020 East Colorado Boulevard
3  Pasadena, California 91107
   (626) 449-2300
4
   Attorneys for Defendant,
5  STEVEN SKOGEBO

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11  SANTOSHA PADFIELD,                   )  CASE NO. BC 718897
                                         )  Assigned to Hon. Elizabeth Allen White
12              Plaintiff,               )  Dept. 48
                                         )
13        v.                             )  **DEFENDANT STEVEN SKOGEBO'S**
                                         )  **ANSWER TO PLAINTIFF'S**
14  DEPARTMENT OF CONSUMER               )  **COMPLAINT; DEMAND FOR JURY**
    AFFAIRS, CONTRACTORS STATE           )  **TRIAL**
15  LICENSE BOARD, a California state    )
    agency; STEVEN SKOGEBO, an           )  *[No fees pursuant to Government Code §6103]*
16  individual; and DOES 1-25, inclusive.)
                                         )  Filing Date: August 28, 2018
17              Defendants.              )  Trial Date:   TBD
                                         )
18

19        COMES NOW Defendant, STEVEN SKOGEBO, answering the Complaint on file

20  herein for itself and for no other Defendants, admits, denies, and alleges as follows:

21        Pursuant to the provisions of California Code of Civil Procedure section 431.30(d),

22  this answering Defendant denies generally and specifically each and every allegation in

23  Plaintiff's Complaint, and the whole thereof, and further specifically denies that Plaintiff

24  were damaged in the sum, or sums alleged, or in any other sum or sums, or at all, by reason

25  of any conduct on any part of this answering Defendant.

26  ///

27  ///

28  ///

DEFENDANT STEVEN SKOGEBO'S ANSWER AND DEMAND FOR JURY TRIAL

*BY FAX*

As Separate and Distinct Affirmative Defenses, Defendant Herein Alleges:

### First Affirmative Defense

Plaintiff's Complaint fails to state a cause of action against this answering Defendant.

### Second Affirmative Defense

To the extent persons or entities other than Defendant proximately caused injury or damage to Plaintiff, Plaintiff's right to recover from Defendant should be correspondingly reduced.

### Third Affirmative Defense

Plaintiff's action is barred by the doctrine of unclean hands in that Plaintiff is guilty of wrongful conduct in connection with the subject matter in this action.

### Fourth Affirmative Defense

Plaintiff cannot state a claim because she has not been deprived of any employment benefits.

### Fifth Affirmative Defense

This action may be barred and/or Defendant's liability may be limited by after-acquired evidence of Plaintiff's misconduct.

### Sixth Affirmative Defense

Plaintiff's cause of action is barred because the purported retaliatory conduct, if any, was privileged by Civil Code section 47.

### Seventh Affirmative Defense

Plaintiff is estopped from pursuing the claims asserted against Defendant in Plaintiff's Complaint, and in each cause of action therein by their own course of conduct.

### Eighth Affirmative Defense

To the extent that Plaintiff suffered any losses, injuries, damages or detriment, such losses, injuries, damages or detriment were caused and contributed to by the actions of Plaintiff herself in that Plaintiff did not exercise ordinary care on her own behalf and her own acts and omissions proximately caused and contributed to the loss, injury, damage and detriment alleged by Plaintiff; therefore, Plaintiff's recovery from Defendant, if any, should

1 | be reduced in proportion to the percentage of Plaintiff's negligence or proportion of their
2 | fault.

### Ninth Affirmative Defense

4 | Plaintiff consented to the acts and events described in Plaintiff's Complaint.

### Tenth Affirmative Defense

6 | Plaintiff's Complaint, and each purported cause of action thereto, is barred by virtue
7 | of Plaintiff's failure to mitigate her damages.

### Eleventh Affirmative Defense

9 | Plaintiff's claims under the California Fair Employment and Housing Act may not be
10 | maintained to the extent they exceed or differ from the allegations of an administrative
11 | charge filed with the appropriate administrative agency.

### Twelfth Affirmative Defense

13 | This action is barred by Plaintiff's failure to exhaust the administrative remedies
14 | required under the California Fair Employment and Housing Act.

### Thirteenth Affirmative Defense

16 | Plaintiff's cause of action is barred to the extent that Plaintiffs seek relief for conduct
17 | occurring more than 365 days prior to the filing of an administrative charge under the
18 | provisions of the California Fair Employment and Housing Act.

### Fourteenth Affirmative Defense

20 | Defendant was privileged in evaluating Plaintiff's work performances and abilities
21 | and in taking or failing to take action based on such evaluations.

### Fifteenth Affirmative Defense

23 | Plaintiff's claims are barred, because, even if Defendant's actions were motivated by
24 | retaliatory reasons, they were also motivated by non-retaliatory reasons, which, standing
25 | alone, would have induced him to make the same decisions.

### Sixteenth Affirmative Defense

27 | Because Plaintiff's Complaint is pled in conclusory terms, Defendant cannot fully
28 | anticipate all affirmative defenses that may apply to the above-captioned action. Defendant

1  therefore reserves the right to assert additional affirmative defenses, if and to the extent that
2  such affirmative defenses are revealed to be applicable at a later time.

### Seventeenth Affirmative Defense

4  To the extent that the Complaint seeks punitive or exemplary damages, it violates
5  Defendant's rights to protection from "excess fines" as provided in the Eighth Amendment
6  of the United States Constitution and the Constitution of the State of California, and it
7  violates Defendant's rights to substantive due process as provided in the Fifth and Fourteenth
8  Amendments of the United States Constitution and the Constitution of the State of
9  California, and therefore, fails to state a cause of action supporting the punitive or exemplary
10 damages claimed.

### Eighteenth Affirmative Defense

12 This answering Defendant's conduct was not outrageous or beyond the bounds of
13 decency.

### Nineteenth Affirmative Defense

15 Defendant alleges, without admitting that it engaged in any of the acts or conduct
16 attributed to it in the Complaint, that any and all actions of this answering Defendant with
17 regard to Plaintiff were conducted in good faith and without fraud, oppression, or malice
18 against plaintiff or her rights, thereby precluding any and all claims for punitive or exemplary
19 damages.

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1

2     WHEREFORE, this answering Defendant pray for judgment as follows:

3     1.    That this action be dismissed in its entirety, with prejudice;

4     2.    That Plaintiff takes nothing by way of their Complaint;

5     3.    That Defendant be awarded costs of suit and attorneys' fees incurred herein;

6     4.    That this Court award such other and further relief as it may deem just and

7           proper.

8

9

10    DATE:   September 26, 2018                    GUTIERREZ, PRECIADO & HOUSE, LLP

11

12                                          By: _____
                                                  Calvin R. House
13                                                Baruch Y. Kreiman
                                                  Attorneys for Defendant
14                                                Steven Skogebo

15

16

17

18

19

20

21

22

23

24

25

26

27

28

N:\STATE CA\hadfield\PLEADINGS\answer.wpd                    5

**DEFENDANT STEVEN SKOGEBO'S ANSWER AND DEMAND FOR JURY TRIAL**

1    ## DEMAND FOR JURY TRIAL

2          Defendant STEVEN SKOGEBO hereby demands a trial by jury in the above-entitled

3    action.

4

5    DATE:  September 26, 2018                    **GUTIERREZ, PRECIADO & HOUSE, LLP**

6

7                             By: _____

8                                 Calvin R. House
                             Baruch Y. Kreiman

9                                 Attorneys for Defendant
                             STEVEN SKOGEBO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT STEVEN SKOGEBO'S ANSWER AND DEMAND FOR JURY TRIAL**

1                            **PROOF OF SERVICE**

2   STATE OF CALIFORNIA

3   COUNTY OF LOS ANGELES

4         I declare that I am employed in the County of Los Angeles, State of California;
I am over the age of 18 years and not a party to the within action; my business address is
5   3020 East Colorado Boulevard, Pasadena, California 91107.

6         On September 26, 2018, I served the foregoing **DEFENDANT STEVEN
SKOGEBO'S ANSWER** on the interested parties in this action by placing a true copy
7   thereof, enclosed in a sealed envelope, addressed as follows:

8

9   S. Shane Sagheb                      Catherine E. Flores,
Sagheb Law & Mediation Services, APC    Deputy Attorney General
10   5950 Canoga Avenue, suite 130         California Department of Justice
Woodland Hills, CA 91367             300 S. Spring St., Ste. 1702
11                                      Los Angeles, CA 90013

12

$\underline{X}$    BY MAIL - I placed such envelope for deposit in the U.S. Mail for service by the
13        United States Postal Service, with postage thereon fully prepaid. I am "readily
familiar" with the firm's practice of collection and processing correspondence for
14       mailing. Under that practice, it would be deposited with the United States Postal
Service on that same day with postage thereon fully prepaid at Pasadena, California.
15        I am aware that on motion of the party served, service is presumed invalid if postal
cancellation date or postage meter date is more than one day after date of deposit for
16        mailing in affidavit.

17 __    BY FEDERAL EXPRESS - I am familiar with the practice at my place of business
for collection and processing of correspondence for overnight delivery maintained by
18        Federal Express. Such correspondence will be deposited with a facility regularly
maintained by Federal Express for receipt on the same day in the ordinary course of
19        business. The envelope was sealed and placed for collection and delivery by Federal
Express with delivery fees paid or provided for in accordance with ordinary business
20        practices.

21 __    BY PERSONAL SERVICE - I delivered such envelope(s) by hand to the offices of
the addressee(s) listed above.
22

$\underline{X}$    (State) I declare under penalty of perjury under the laws of the State of California that
23        the foregoing is true and correct.

24   Executed September 26, 2018, at Pasadena, California.

25

26                                 Velvet Rhodes

27

28

DEFENDANT STEVEN SKOGEBO'S ANSWER AND DEMAND FOR JURY TRIAL

# EXHIBIT 4

1   XAVIER BECERRA
    Attorney General of California
2   GARY S. BALEKJIAN
    Supervising Deputy Attorney General
3   CATHERINE E. FLORES
    Deputy Attorney General
4   State Bar No. 252240
      300 South Spring Street, Suite 1702
5     Los Angeles, CA  90013
      Telephone: (213) 269-6502
6     Fax: (213) 897-1071
      E-mail: Catherine.Flores@doj.ca.gov
7   *Attorneys for Defendant Department of Consumer*
    *Affairs, Contractors State License Board*

8

             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

                   COUNTY OF LOS ANGELES

10

11

12

|  |  |
|---|---|
| **SANTOSHA PADFIELD,** | Case No. BC718897 |
| Plaintiff, | **NOTICE OF FILING OF REMOVAL** |
| v. | |
| **DEPARTMENT OF CONSUMER AFFAIRS, CONTRACTORS STATE LICENSE BOARD, a California state agency; STEVEN SKOGEBO, an individual; and DOES 1-25, inclusive,** | Action Filed: August 28, 2018 |
| Defendants. | |

23       **TO THE CLERK OF THE ABOVE-ENTITLED COURT AND PLAINTIFF:**

24       **PLEASE TAKE NOTICE** that a Notice of Removal of this action was filed in the United

25  States District Court for the Central District of California on or around September 28, 2018.

26       A true and correct copy of the Notice of Removal of Civil Action to Federal Court Under

27  28 U.S.C. sections 1332 and 1441 is attached hereto as Exhibit "A."

28

<div align="center">1</div>

Dated:  September 27, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
GARY S. BALEKJIAN
Supervising Deputy Attorney General

CATHERINE E. FLORES
Deputy Attorney General
*Attorneys for Defendant Department of
Consumer Affairs, Contractors State
License Board*

LA2018502553
53083892.docx

NOTICE OF FILING OF REMOVAL (BC718897)